UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**JUDGE BUCKLO**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | ~~UNDER SEAL~~  ~~MAGISTRATE~~ JUDGE SCHENKIER |
| v. | ) | |
| | ) | No. **15 CR      018** |
| VIBGYOR OPTICAL SYSTEMS, INC., | ) | |
| BHARAT VERMA, | ) | |
| also known as "Victor Verma," and | ) | Violations: Title 18, United States |
| URVASHI VERMA, | ) | Code, Sections 371 and 1956(a)(2)(A), |
| also known as "Sonia Verma" | ) | and Title 22, United States Code, |
| and "Urvashi Bhushan" | ) | Section 2778(c) |

## COUNT ONE

1-14-2015

**FILED**

The SPECIAL SEPTEMBER 2014 GRAND JURY charges:

JAN 1 4 2015

1.    At times material to this indictment:

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

a.    In furtherance of the foreign policy and security of the United States, the Arms Export Control Act, Title 22, United States Code, Section 2778, authorized the President of the United States to control the export and import of "defense articles."

*The Export of Defense Articles*

b.    Pursuant to the authority granted in the Arms Export Control Act, the United States Department of State, Directorate of Defense Trade Controls, promulgated the International Traffic in Arms Regulations, Title 22, Code of Federal Regulations, Parts 120-130, which governed the export of defense articles. The International Traffic in Arms Regulations contained the United States

Munitions List, Title 22, Code of Federal Regulations, Section 121.1, which designated items that were defense articles.

      c.    Once an item was designated as a defense article on the United States Munitions List, any person seeking to export that item from the United States was required to obtain a license or written approval to do so from the Directorate of Defense Trade Controls.

      d.    For purposes of the International Traffic in Arms Regulations:

      i.    The definition of "defense articles" included any item and technical data contained within the United States Munitions List.

      ii.    The definition of "export" included: (1) sending and taking defense articles out of the United States in any manner, except by mere travel outside of the United States by a person whose personal knowledge includes technical data; and (2) the disclosure and transfer of technical data to a foreign person, whether in the United States or abroad.

*The Import of Defense Articles*

      e.    Under the International Traffic in Arms Regulations, the permanent import of defense articles was regulated by the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives under the direction of the Attorney General.

      f.    The Bureau of Alcohol, Tobacco, Firearms and Explosives promulgated regulations, Title 27, Code of Federal Regulations, Part 447, which governed the import of defense articles and contained the United States Munitions

2

Import List, Title 27, Code of Federal Regulations, Sections 447.21 and 447.22. The United States Munitions Import List designated items that were defense articles for purposes of the import regulations.

g.      Once an item was designated as a defense article on the United States Munitions Import List, any person seeking to permanently import that item into the United States was required to obtain a permit to do so from the Bureau of Alcohol, Tobacco, Firearms and Explosives.

h.      For purposes of the import regulations:

i.      "Defense article" meant any item or technical data covered by the United States Munitions Import List.

ii.      "Import" or "importation" included bringing any of the articles on the United States Munitions Import List into the United States from a foreign country, except for transactions involving items in transit or temporarily imported or exported.

i.      Any person engaged in the United States in the business of manufacturing or exporting defense articles, or importing defense articles, was required to register with the Directorate of Defense Trade Controls or the Bureau of Alcohol, Tobacco, Firearms and Explosives, respectively. Registration, standing alone, did not confer a right to export or import defense articles.

j.      It was the policy of the United States to deny licenses, permits, and other approvals for exports and imports of defense articles destined for or

originating in certain countries. This policy applied to countries with respect to which the United States maintained an arms embargo.

k.     The United States maintained an arms embargo with respect to the People's Republic of China.

2.     At times material to this indictment:

a.     The United States Department of Defense, through the Defense Logistics Agency, obtained weapons, parts, and other supplies by ordering such items from and entering into contracts with suppliers, which were referred to as prime contractors. Prime contractors frequently used subcontractors to manufacture or otherwise procure items the prime contractors were to supply to the Department of Defense.

b.     Defendant VIBGYOR OPTICAL SYSTEMS, INC. was an Illinois corporation that purported to manufacture optics and optical systems, including for military use. VIBGYOR supplied items to prime and subcontractors to fulfill Department of Defense contracts.

c.     Defendant BHARAT VERMA, also known as "Victor Verma," was VIBGYOR's owner and president.

d.     Defendant URVASHI VERMA, also known as "Sonia Verma" and "Urvashi Bhushan," was a VIBGYOR employee. SONIA VERMA was also the registered agent and president of US International, Inc., an Illinois corporation that served as a subcontractor to VIBGYOR. SONIA VERMA was VICTOR VERMA's daughter.

4

e.     Defense Contractor A was an Illinois corporation and prime contractor owned and operated by a relative of VICTOR VERMA and SONIA VERMA. Defense Contractor A received contracts to supply the Department of Defense with items and used VIBGYOR as a subcontractor to procure items to fulfill Department of Defense contracts.

f.     Defense Contractor B and Defense Contractor C were prime contractors located in Pennsylvania and California, respectively. Defense Contractor B and Defense Contractor C each received contracts to supply the Department of Defense with items and used VIBGYOR as a subcontractor to procure items to fulfill Department of Defense contracts.

g.     Broker A and Broker B were individuals operating businesses in California and South Carolina, respectively. Broker A and Broker B facilitated VIBGYOR's acquisition of items from manufacturers located in the People's Republic of China to supply to Defense Contractor B, Defense Contractor C, and other prime contractors.

*Plate, Indicator*

h.     A Plate, Indicator was a component plate used by the Department of Defense in night vision image intensifications systems and was covered by Category XII of the United States Munitions List.

i.     The technical data for a Plate, Indicator, was covered by Category XII of the United States Munitions List.

5

j.　　Neither a Plate, Indicator nor the technical data for a Plate, Indicator could be exported from the United States without a license or written approval from the Directorate of Defense Trade Controls.

k.　　No export license or written approval for the export of a Plate, Indicator or its technical data had been issued by the Directorate of Defense Trade Controls to defendants VIBGYOR, VICTOR VERMA, or SONIA VERMA.

*Eyepiece Assembly*

l.　　An Eyepiece Assembly was used by the Department of Defense as a component in a gunner's primary sight assembly for an M1A1 tank and was covered by Category VII of the United States Munitions Import List.

m.　　An Eyepiece Assembly could not be imported into the United States without a permit issued by the Bureau of Alcohol, Tobacco, Firearms and Explosives.

n.　　No permit for the import of an Eyepiece Assembly had been issued by the Bureau of Alcohol, Tobacco, Firearms and Explosives to defendants VIBGYOR, VICTOR VERMA, or SONIA VERMA.

3.　　Beginning no later than on or about November 29, 2006, and continuing until at least on or about March 7, 2014, in the Northern District of Illinois, and elsewhere,

VIBGYOR OPTICAL SYSTEMS, INC.,
BHARAT VERMA,
also known as "Victor Verma," and
URVASHI VERMA,
also known as "Sonia Verma" and "Urvashi Bhushan,"

6

defendants herein, conspired with each other, and with others, to:

      a.    Commit an offense against the United States, namely, the knowing and willful export and attempt to export of a defense article subject to the United States Munitions List from the United States without first having obtained the required license or written approval from the Directorate of Defense Trade Controls, in violation of Title 22, United States Code, Section 2778(c), and Title 22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1; and

      b.    Commit an offense against the United States, namely, the knowing and willful import of a defense article subject to the United States Munitions Import List into the United States without having first obtained the required permit from the Bureau of Alcohol, Tobacco, Firearms and Explosives, in violation of Title 22, United States Code, Section 2778(c), Title 22, Code of Federal Regulations, Section 123.2, and Title 27, Code of Federal Regulations, Sections 447.21, 447.41, and 447.61.

*Manner and Means of the Conspiracy*

    4.    It was part of the conspiracy that VIBGYOR OPTICAL SYSTEMS, INC., by and through VICTOR VERMA, sought and received contracts to supply items to prime contractors to fulfill Department of Defense contracts.

    5.    It was further part of the conspiracy that US International, Inc., by and through SONIA VERMA, acted as a subcontractor for VIBGYOR in the procurement of items to fulfill Department of Defense contracts.

6.     It was further part of the conspiracy that Defense Contractor A sought and received Department of Defense contracts and subcontracted VIBGYOR to supply items related to the contracts.

7.     It was further part of the conspiracy that VIBGYOR, by and through VICTOR VERMA, used Broker A and Broker B to facilitate the acquisition of items from manufacturers located in the People's Republic of China, which items were used by VIBGYOR to supply to prime contractors.

8.     It was further part of the conspiracy that VIBGYOR provided and attempted to provide Broker A and Broker B with defense articles in order to facilitate their manufacture.

9.     It was further part of the conspiracy that SONIA VERMA provided and attempted to provide manufacturers in the People's Republic of China with defense articles in order to facilitate their manufacture.

10.     It was further part of the conspiracy that VIBGYOR, by and through VICTOR VERMA and SONIA VERMA, supplied and caused to be supplied to prime contractors and the Department of Defense items that had been manufactured in the People's Republic of China.

11.     It was further part of the conspiracy that VIBGYOR, by and through VICTOR VERMA, and US International, Inc., by and through SONIA VERMA, received payments from the Department of Defense and prime and subcontractors for supplied items.

12.     It was further part of the conspiracy that VIBGYOR, by and through VICTOR VERMA, and US International, Inc., by and through SONIA VERMA, made payments to Broker A, Broker B, and manufacturers located in the People's Republic of China for items that had been produced in and imported from the People's Republic of China.

13.     It was further part of the conspiracy that VIBGYOR, by and through VICTOR VERMA, falsely claimed, materially misrepresented, and intentionally withheld the location of manufacture for items used to fulfill contracts for prime contractors and the Department of Defense.

14.     It was further part of the conspiracy that VIBGYOR, VICTOR VERMA, SONIA VERMA, and their coconspirators communicated with each other, with prime and subcontractors, with manufacturers located in the People's Republic of China, and with others about the objects of the conspiracy, including the manufacture and importation of defense articles.

15.     It was further part of the conspiracy that VIBGYOR, VICTOR VERMA, SONIA VERMA, and their coconspirators and others concealed, misrepresented, and hid, and caused to be concealed, misrepresented, and hidden, the existence and purpose of the conspiracy and the acts done in furtherance of the conspiracy.

*Overt Acts*

16.     In furtherance of the conspiracy and to effect its objects and purposes, VIBGYOR OPTICAL SYSTEMS, INC., VICTOR VERMA, and SONIA VERMA performed and caused to be performed the following overt acts, among others, within the Northern District of Illinois, and elsewhere:

*Documents Submitted to the United States*

a.     On or about October 20, 2008, VIBGYOR, by and through VICTOR VERMA, registered as a manufacturer and exporter of hardware and technical data with the Directorate of Defense Trade Controls. VIBGYOR renewed its registration on or about November 4, 2009, and May 27, 2011.

b.     On or about October 13, 2009, SONIA VERMA submitted a Militarily Critical Technical Data Agreement to the Defense Logistics Information Service, which permitted SONIA VERMA access to certain technical data in the Defense Logistics Agency's possession. In submitting the Militarily Critical Technical Data Agreement, SONIA VERMA acknowledged her responsibility to abide by United States export control laws and regulations, including under certain circumstances, the responsibility to obtain an export license prior to the release of certain militarily critical technical data.

c.     On or about December 26, 2012, VICTOR VERMA submitted a Militarily Critical Technical Data Agreement to the Defense Logistics Information Service, which permitted VICTOR VERMA access to certain technical data in the Defense Logistics Agency's possession. In submitting the Militarily Critical

Technical Data Agreement, VICTOR VERMA acknowledged his responsibility to abide by United States export control laws and regulations, including under certain circumstances, the responsibility to obtain an export license prior to the release of certain militarily critical technical data.

*Plate, Indicators*

d.    On or about December 22, 2009, SONIA VERMA sent an email to a manufacturer in the People's Republic of China, requesting a quote for the manufacture of an item with part number US-9551. Attached to the email were six data files, including a defense article, namely, technical data in the form of a drawing entitled "Plate, Indicator."

e.    On or about January 4, 2010, VIBGYOR issued a purchase order, number 10-0104-02, to US International, Inc., to supply 200 units of "Plate Indicator[s]," part number US-9551.

f.    On or about January 4, 2010, US International, Inc., by and through SONIA VERMA, issued a purchase order, number 10-0104-02, to a manufacturer located in the People's Republic of China to supply 200 units of "Plate Indicator[s]," part number US-9551.

g.    On or about January 14, 2010, VIBYOR, by and through VICTOR VERMA, sent a facsimile transmission to Defense Contractor B, confirming the receipt of a purchase order, number 193334, which called for VIBGYOR to supply Defense Contractor B with a quantity of 169 "Plate, Indicator[s]."

11

h.      On or about January 19, 2010, SONIA VERMA attempted to send to an individual in the People's Republic of China a package containing a defense article, namely, a Plate, Indicator.

i.      On or about April 7, 2010, VIBGYOR supplied Defense Contractor B with 169 Plate, Indicators.

*Eyepiece Assemblies*

j.      On or about December 18, 2012, VIBGYOR entered into an agreement with Defense Contractor C to produce 375 Eyepiece Assemblies, which items Defense Contractor C was to use to fulfill a contract, number SPM7M1-13-M-0840, for the Department of Defense.

k.      On or about January 26, 2013, VIBGYOR, by and through VICTOR VERMA, sought a modification to its agreement with Defense Contractor C for the supply of 375 Eyepiece Assemblies.

l.      Beginning no later than on or about June 7, 2013, VIBGYOR imported and caused to be imported, through Broker A and Broker B, defense articles, namely, Eyepiece Assemblies from the People's Republic of China.

m.      On or about March 26, 2013, VIBGYOR supplied Defense Contractor C with 100 Eyepiece Assemblies.

n.      On or about June 3, 2013, VIBGYOR supplied Defense Contractor C with 100 Eyepiece Assemblies.

o.      On or about July 25, 2013, VIBGYOR supplied Defense Contractor C with 50 Eyepiece Assemblies.

p.     On or about November 4, 2013, VIBGYOR supplied Defense Contractor C with 35 Eyepiece Assemblies.

q.     On or about March 7, 2014, VIBGYOR supplied Defense Contractor C with 40 Eyepiece Assemblies.

r.     Between on or about May 17, 2013 and January 13, 2014, VIBGYOR caused Defense Contractor C to issue checks payable to VIBGYOR for the Eyepiece Assemblies supplied by VIBGYOR.

*Additional Overt Acts*

s.     On or about February 26, 2010, VICTOR VERMA sent a facsimile transmission to a manufacturer in the People's Republic of China, expressing a desire to circumvent United States import restrictions by either claiming that VIBGYOR was in a partnership with the manufacturer or by routing orders through the manufacturer's customers or representatives in Europe.

t.     On or about March 31, 2010, VICTOR VERMA submitted to the United States an application for a license for the permanent export of unclassified defense articles and related technical data, claiming that the country of destination was India and that the foreign end-user was a company in Delhi.

u.     On or about May 28, 2013, VICTOR VERMA sent an email to a representative of Defense Contractor C, claiming that VIBGYOR was a domestic supplier and manufacturer for the parts it provided.

v.     On or about June 20, 2014, VICTOR VERMA had a telephone conversation with a representative from a prime contractor during which VICTOR

VERMA claimed that items supplied by VIBGYOR had not been brought from overseas.

All in violation of Title 18, United States Code, Section 371.

14

## COUNT TWO

The SPECIAL SEPTEMBER 2014 GRAND JURY further charges:

1.      Paragraphs 1 and 2 of Count One are incorporated here.

2.      Beginning no later than on or about November 29, 2006, and continuing until at least on or about March 7, 2014, in the Northern District of Illinois, and elsewhere,

> VIBGYOR OPTICAL SYSTEMS, INC.,
> BHARAT VERMA,
> also known as "Victor Verma," and
> URVASHI VERMA,
> also known as "Sonia Verma" and "Urvashi Bhushan,"

defendants herein, conspired with each other, and with other persons, to knowingly defraud the United States by interfering with and obstructing a lawful government function, namely, the Department of State, Directorate of Defense Trade Controls' enforcement of laws and regulations prohibiting the export of defense articles without a license or written approval, and the Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives' enforcement of laws and regulations prohibiting the import of defense articles without a permit, by deceit, craft, trickery, and dishonest means.

### Manner and Means of the Conspiracy

3.      Paragraphs 4 through 15 of Count One are incorporated here.

### Overt Acts

4.      Paragraph 16 of Count One is incorporated here.

All in violation of Title 18, United States Code, Section 371.

## COUNT THREE

The SPECIAL SEPTEMBER 2014 GRAND JURY further charges:

1.     Subparagraphs 1(a) through 1(d), 1(j), and 1(k) of Count One are incorporated here.

2.     On or about January 19, 2010, at Arlington Heights, in the Northern District of Illinois,

VIBGYOR OPTICAL SYSTEMS, INC.,
BHARAT VERMA,
also known as "Victor Verma," and
URVASHI VERMA,
also known as "Sonia Verma" and "Urvashi Bhushan,"

defendants herein, willfully exported and attempted to export, from the United States to the People's Republic of China, a defense article subject to the United States Munitions List, namely, a Plate, Indicator, without first having obtained the required license or written approval from the Directorate of Defense Trade Controls;

In violation of Title 22, United States Code, Section 2778(c), and Title 22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1.

## COUNT FOUR

The SPECIAL SEPTEMBER 2014 GRAND JURY further charges:

On or about October 22, 2013, at Arlington Heights, in the Northern District of Illinois, and elsewhere,

VIBGYOR OPTICAL SYSTEMS, INC., and
BHARAT VERMA,
also known as "Victor Verma,"

defendants herein, knowingly transported, transmitted and transferred funds from a place in the United States to a place outside the United States, namely, a transmission and transfer of $8,667 in funds via a wire transfer from the United States to the People's Republic of China, with the intent to promote the carrying on of a specified unlawful activity, namely, the import of an Eyepiece Assembly, a defense article subject to the United States Munitions Import List, in violation of Title 22, United States Code, Section 2778(c);

In violation of Title 18, United States Code, Section 1956(a)(2)(A).

## FORFEITURE ALLEGATION ONE

The SPECIAL SEPTEMBER 2014 GRAND JURY alleges:

1.      Counts One through Three are incorporated here for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.      Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), upon conviction of any of the offenses alleged in Counts One through Three of this indictment,

VIBGYOR OPTICAL SYSTEMS, INC.,<br>
BHARAT VERMA,<br>
also known as "Victor Verma," and<br>
URVASHI VERMA,<br>
also known as "Sonia Verma" and "Urvashi Bhushan,"

defendants herein, shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to said violations.

17.     If, as a result of any act or omission by the defendants, any property subject to forfeiture:

  a.      cannot be located upon the exercise of due diligence;

  b.      has been transferred or sold to, or deposited with, a third party;

  c.      has been placed beyond the jurisdiction of the Court;

  d.      has been substantially diminished in value; or

  e.      has been commingled with other property, which cannot be divided without difficulty;

18

it is the intent of the United States to seek forfeiture of substitute property belonging to defendants under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

## FORFEITURE ALLEGATION TWO

The SPECIAL SEPTEMBER 2014 GRAND JURY further alleges:

1.     Count Four is incorporated here for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(1).

2.     Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Section 1956,

VIBGYOR OPTICAL SYSTEMS, INC., and
BHARAT VERMA,
also known as "Victor Verma,"

defendants herein, shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property.

3.     If, as a result of any act or omission by the defendants, any property subject to forfeiture:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been placed beyond the jurisdiction of the Court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property, which cannot be divided without difficulty;

it is the intent of the United States to seek forfeiture of substitute property belonging to defendants, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 982(a)(1).

A TRUE BILL:

_____

FOREPERSON

_____
UNITED STATES ATTORNEY